### UNITED STATES

v.

### Oliver J. SMITH, Chief Warrant Officer (CWO 4), U.S. Navy.

### NMCCA 200201846.

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 11 July 2001.

Decided 28 July 2005.

---

Lt Michael Navarre, JAGC, USNR, Appellate Defense Counsel.

Lt Robert Salyer, JAGC, USNR, Appellate Defense Counsel.

Lt Mark Herrington, JAGC, USNR, Appellate Government Counsel.

Lt Christopher J. Hajec, JAGC, USNR, Appellate Government Counsel.

LCDR Monique A. Allen, JAGC, USNR, Appellate Government Counsel.

Before DORMAN, Chief Judge, PRICE, Senior Judge, and HARRIS, Appellate Military Judge.

DORMAN, Chief Judge:

A military judge, sitting as a general court-martial, convicted the appellant, pursuant to his pleas, of unauthorized absence, conduct unbecoming an officer, fraternization, adultery, and wrongful failure to create and maintain records as required by 18 U.S.C. § 2257, in violation of Articles 86, 133, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 933, and 934. The appellant was sentenced to confinement for 24 months and forfeiture of $1,000.00 pay per month for 240 months. The convening authority approved the sentence as adjudged.

We have considered the appellant's six assignments of error,[1] including the constitu-

---

1. I. The appellant's sentence, including two years confinement and forfeiture of $1,000.00 pay per month for twenty years, is inappropriately severe in light of the nature of the offenses and the appellant's outstanding Navy career.

II. The appellant's sentence of forfeiture of $1,000.00 pay per month for twenty years constituted an excessive fine under the Eighth Amendment to the U.S. Constitution.

III. In sentencing, the military judge erred by allowing evidence of uncharged misconduct (child pornography) where the Government had already withdrawn the specification pertaining to that evidence.

IV. 18 U.S.C. § 2257 is unconstitutionally overbroad because it is a content-based restriction on protected speech that bears little relation to the compelling Government interest of pre-

tionality of a federal statute regarding the production of sexually explicit media, the Government's answers, the appellant's reply brief, and the record of trial. We have also considered the excellent oral arguments of appellate counsel presented on 15 June 2005. We conclude that the findings and the sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

## Background

The appellant, a Chief Warrant Officer 4 (CWO4) with more than 24 years of active service, engaged in marketing adult entertainment for profit on the Internet. He obtained and managed two websites, where he posted pictures of himself and Mrs. D., his ex-wife, engaging in intercourse and fetish activities. At the time of the filming, Mrs. D. was married to another naval officer. The appellant showed a petty officer in his chain of command how to operate one of his websites and how to conduct the business. The appellant also loaned the petty officer recording equipment for the purpose of producing adult entertainment and to enable the petty officer to take over one of the websites. The petty officer produced hundreds of pictures of females engaged in sexually explicit conduct. Together, the appellant and the petty officer posted these pictures on the two websites.

Although the appellant avers that he ascertained the ages of the females and maintained the required records concerning those who appeared on the website he maintained, he acknowledges that he did not do so for the website he was turning over to the petty officer. The appellant, however, owned both websites. The posted photos included images of a minor female engaged in sexually explicit conduct. The appellant knew that these photos would be transported in interstate commerce. An investigation concerning the production of child pornography in base housing led to the apprehension of the petty officer and a search of the appellant's apartment. When the appellant discovered that his apartment had been searched and his computer equipment seized, he commenced a 17–month unauthorized absence. The petty officer received nonjudicial punishment for his participation.

## Constitutional Challenge to 18 U.S.C. § 2257

The appellant pled guilty to wrongfully publishing and managing a website containing visual depictions of sexually explicit conduct, without creating and/or maintaining individually identifiable records pertaining to every performer portrayed in the visual depictions, knowing that the visual depictions would be transported in interstate commerce, in violation of 18 U.S.C. § 2257.[2] During the providence inquiry, the appellant admitted that he posted pictures on one of his adult entertainment websites without asking the age of the performers or creating identifiable records concerning them. Although he did not contest the constitutionality of this statute at trial, he does so before this court. In his fourth assignment of error the appellant contends that the statute is overbroad because it is a content-based restriction on protected speech that bears little relation to the compelling Government interest of preventing child pornography that it purports to serve. In his fifth assignment of error, he contends that the statute is unconstitutionally overbroad as applied, because it unnecessarily regulates protected speech by requiring onerous record-keeping for sexually explicit depictions of persons under the age of 18. We do not agree with either argument.

---

venting child pornography that it purports to serve.
    V. 18 U.S.C. § 2257 is unconstitutionally overbroad as applied because it unnecessarily regulates protected speech by requiring onerous record-keeping for sexually explicit depictions of persons under the age of 18.
Supplemental Assignment of Error. In light of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct.

2348, 147 L.Ed.2d 435 (2000), Congress unconstitutionally delegated legislative authority in Articles 56 and 86, UCMJ, 10 U.S.C. §§ 856 and 886, to enact findings of fact that increase the maximum punishment for unauthorized absence.

**2.** See Appendix A for the text of 18 U.S.C. § 2257(a) and (b).

The appellant recognizes that two federal circuit courts of appeals have reviewed the statutory provisions he now attacks, and both found the provisions to be constitutional. *See Connection Distrib. Co. v. Reno,* 154 F.3d 281 (6th Cir.1998); *Am. Library Ass'n v. Reno,* 33 F.3d 78 (D.C.Cir.1994). The appellant argues, however, in light of subsequent decisions by the U.S. Supreme Court, these two cases were wrongly decided. In making his argument he relies upon *Watchtower Bible and Tract Society of New York, Inc. v. Village of Stratton,* 536 U.S. 150, 122 S.Ct. 2080, 153 L.Ed.2d 205 (2002); *City of Los Angeles v. Alameda Books, Inc.,* 535 U.S. 425, 122 S.Ct. 1728, 152 L.Ed.2d 670 (2002); and *Ashcroft v. Free Speech Coalition,* 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002). He also relies upon *United States v. Playboy Entertainment Group, Inc.,* 529 U.S. 803, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000). We have examined these cases and find them to be inapplicable and readily distinguishable.

The statute upon which the appellant was convicted imposes record-keeping and disclosure requirements on the producers of certain sexually explicit materials. Although the constitutionality of this statute was not litigated before the trial court, we note that Congress passed the statute in order to address a problem that hindered the prosecution of child pornography offenses, that is, claimed ignorance of the true age of child performers. *Am. Library Ass'n,* 33 F.3d at 81. Specifically, 18 U.S.C. § 2257 requires producers of materials containing visual depictions of explicit sexual activity to determine the names and ages of the performers, maintain records of this information, and indicate on each copy of the material where those records are kept. While this statute does not ban any conduct, it does place a requirement on visual reproductions of sexually explicit conduct. That distinction is of no moment because the "Government's content-based burdens must satisfy the same rigorous scrutiny as its content-based bans." *Playboy Entm't Group,* 529 U.S. at 812, 120 S.Ct. 1878.

As with all appellate issues, it is appropriate that we first resolve the appropriate standard of review to apply. The appellant argues that because 18 U.S.C. § 2257 is content-based, we must apply a strict scrutiny standard to the challenged provision. The Government argues that the provision is content-neutral, and thus should be subjected to an intermediate standard of review. In determining the appropriate standard of review concerning the challenged statutory provision, we must first consider whether 18 U.S.C. § 2257 is content-based or content-neutral. "When the Government seeks to restrict speech based on its content, the usual presumption of constitutionality . . . is reversed. 'Content-based regulations are presumptively invalid. . . .'" *Id. at* 817, 120 S.Ct. 1878 (quoting *R.A.V. v. St. Paul,* 505 U.S. 377, 382, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992)). The standard of review of a content-based regulation is strict scrutiny. *Id.* at 814, 120 S.Ct. 1878; *see also Alameda Books,* 535 U.S. at 434, 122 S.Ct. 1728; *Connection Distrib. Co.,* 154 F.3d at 291.

When reviewing the statutory provision, if it can be determined that it is not aimed at the content itself "but rather at . . . secondary effects . . . the [statute is] deemed content neutral." *Alameda Books,* 535 U.S. at 434, 122 S.Ct. 1728 (citing *Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 47–49, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986)). "[A] content-neutral regulation will be sustained if 'it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.'" *Turner Broad. Sys. Inc. v. FCC,* 512 U.S. 622, 662, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994)(quoting *United States v. O'Brien,* 391 U.S. 367, 377, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968)). The regulation, however, "need not be the least speech-restrictive means of advancing the Government's interests. 'Rather, the requirement of narrow tailoring is satisfied so long as the . . . regulation promotes a substantial governmental interest that would be achieved less effectively absent the regulation.'" *Id.* (quoting *Ward v. Rock Against Racism,* 491 U.S. 781, 799, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989)(internal quote omitted)); *see also*

Alameda Books, 535 U.S. at 434, 122 S.Ct. 1728. Content-neutral provisions are subjected to intermediate scrutiny. Alameda Books, 535 U.S. at 440, 122 S.Ct. 1728; see also Turner Broad. Sys., 512 U.S at 661–62, 114 S.Ct. 2445 (citing Rock Against Racism, 491 U.S. at 781, 109 S.Ct. 2746).

The principal inquiry in determining content neutrality ... is whether the [G]overnment has adopted a regulation of speech because of disagreement with the message it conveys. The [G]overnment's purpose is the controlling consideration. A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others. Government regulation of expressive activity is content neutral so long as it is "justified without reference to the content of the regulated speech."

Rock Against Racism, 491 U.S. at 791, 109 S.Ct. 2746 (citations omitted).

Because the appellant did not contest the constitutionality of 18 U.S.C. § 2257 at his court-martial, the record does not contain any evidence concerning why Congress passed that statute. Both the appellant and the Government, however, have acknowledged in their pleadings before this court that the purpose behind the Act was to further address the issue of child pornography. We further note the analysis of 18 U.S.C. § 2257 by the D.C. Circuit:

Our inquiry, then, is whether the Act's record-keeping requirements are narrowly tailored to the prevention of child pornography. To begin, it seems obvious to us that, as a general matter, the requirements of section 2257 advance the abatement of child pornography in fundamental ways. By requiring that primary producers inspect and make a record of documentary evidence of the performers' ages and, in turn, that secondary producers inspect and retain a copy of the same, section 2257 forwards three goals: It ensures that primary producers actually confirm that a prospective performer is of age; it deters children from attempting to pass as adults; and, most important, it creates the only mechanism by which secondary producers

(who by definition have no contact with performers) can be required to verify the ages of the individuals pictured in the materials they will be producing. Absent the primary producers' records, they can always plead honest mistake; and this is precisely the problem that prompted the [Attorney General's Commission on Pornography] to recommend passage of the Act....

Am. Library Ass'n, 33 F.3d at 88–89. Based upon our analysis of the challenged statutory provision, we find it to be content-neutral, and therefore subject to the intermediate standard of review outlined in Turner Broadcasting System. We further adopt the analysis of the D.C. Circuit set forth above.

While the appellant concedes that two federal circuit courts reviewed the constitutionality of 18 U.S.C. § 2257 and both held the statute constitutional under a content-neutral analysis, he argues that the recent decisions of the Supreme Court cast doubt on the continued validity of those cases. In support of his position, the appellant notes that the Sixth Circuit has returned Connection Distributing Co. to the district court for reconsideration in light of Watchtower Bible & Tract Society; Alameda Books; Free Speech Coalition; and Playboy Entertainment Group. See Connection Distrib. Co. v. Reno, 46 Fed.Appx. 837, 2002 WL 31119685 (6th Cir.2002).

■ Having reviewed the facts of this case, we find that the appellant's failure to determine the age and to record the identity of the child performer bore a direct relationship to the Government's interest in preventing child pornography. We have also carefully considered the cases named in the preceding paragraph and find that they are not only readily distinguishable from the case before us, but also from American Library Ass'n and Connection Distributing Co. We conclude that the appellant's constitutional rights were not violated by the application of 18 U.S.C. § 2257 to his conduct. We are not persuaded by the appellant's arguments and conclude that the statute is

not overbroad as applied to the appellant.[3]

## Sentence Severity

■ In the appellant's first assignment of error, he contends that the sentence of two years confinement and forfeiture of $1,000.00 pay per month for 240 months (20 years) was inappropriately severe given the nature of the offenses and his character. We disagree.

In determining the appropriateness of a sentence, we are to afford the appellant individualized consideration under the law. Specifically, we must review the appropriateness of the sentence based upon the "nature and seriousness of the offense and the character of the offender...." *United States v. Mamaluy*, 27 C.M.R. 176, 181, 1959 WL 3587 (C.M.A.1959). Without question, this requires a balancing of the offenses against the character of the offender.

The appellant, a retirement-eligible naval officer, had a stellar career prior to these offenses, was well respected in his occupational specialty, and had significant sea duty as an enlisted Sailor and as an officer. The appellant, however, was a commissioned officer who engaged in misconduct that adversely impacted the Navy, his fellow shipmates, and dependents. The appellant's operation of an adult entertainment website directly involved: (1) adultery with the wife of a fellow naval officer; (2) fraternization with a subordinate, which led to the subordinate committing misconduct and receiving nonjudicial punishment; (3) exploitation of an underage dependent by placing pornographic photos of her on the Internet; and, (4) Internet postings of pictures of himself engaged in sexually explicit acts. After reviewing the entire record, including careful consideration of the evidence in extenuation and mitigation, we conclude that the appellant's assertion that his sentence was inappropriately severe is without merit.

## Excessive Forfeitures

■ In his second assignment of error, the appellant avers that the sentence of forfeiture of $1,000.00 pay per month for 240

months ($240,000.00 over the course of 20 years) constituted an excessive fine under the Eighth Amendment. We disagree.

"The maximum authorized amount of a partial forfeiture shall be determined by using the basic pay, *retired pay*, or retainer pay, as applicable...." RULE FOR COURTS-MARTIAL 1103(b)(2), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2000 ed.)(emphasis added). Forfeiture of pay and retired pay are well-recognized punishments at an American court-martial. W. WINTHROP, MILITARY LAW AND PRECEDENTS 427–31 (2d ed.1920 Reprint); *see McCarty v. McCarty*, 453 U.S. 210, 222 n. 14, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981).

The appellant argues that in accordance with the holding in *United States v. Bajakajian*, 524 U.S. 321, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998), the appellant's forfeitures were punitive and thus amounted to an excessive fine in violation of the Excessive Fines Clause of the Eighth Amendment. In *Bajakajian* the Supreme Court found a forfeiture greater than $350,000.00 to be excessive where the appellant was convicted of failing to declare cash in excess of $10,000.00 when entering the country. The Court applied a two-prong approach. First, it determined whether there was a punitive criminal forfeiture amounting to a fine, and second, it determined whether the fine was grossly excessive. *Id.* at 328, 118 S.Ct. 2028.

Our superior court has declined to hold that the loss of retirement benefits due to a punitive discharge is a fine within the meaning of the Excessive Fines Clause. *United States v. Reed*, 54 M.J. 37, 44–45 (C.A.A.F. 2000). Although the appellant did not receive a punitive discharge, we need not decide in this case whether forfeiture of a portion of retired pay amounts to a fine under the first prong of the test, because we have already answered the second prong in the negative. That is, that the forfeitures taken were appropriate for this retirement-eligible officer in light of the seriousness of his offenses.

---

**3.** We reach no conclusion as to the constitutionality of 18 U.S.C. § 2257(b)(2), which was not at

issue in this case.

## Conclusion

We have also considered the remaining assignments of error and find them to be without merit. Accordingly, the findings and the sentence, as approved by the convening authority, are affirmed. We direct that the supplemental Court Martial Order reflect that the appellant was absent without authority from 23 August 1999 until 19 January 2001 in the Specification under Charge I.

Senior Judge PRICE and Judge HARRIS concur.

Judge HARRIS participated in the decision of this case prior to his departure from the court.

## Appendix A

18 U.S.C. § 2257. Record keeping requirements.

(a) Whoever produces any book, magazine, periodical, film, videotape, or other matter which—

(1) contains one or more visual depictions made after November 1, 1990 of actual sexually explicit conduct; and,

(2) is produced in whole or in part with materials which have been mailed or shipped in interstate or foreign commerce, or is shipped or transported or is intended for shipment or transportation in interstate or foreign commerce; shall create and maintain individually identifiable records pertaining to every performer portrayed in such a visual depiction.

(b) Any person to whom subsection (a) applies shall, with respect to every performer portrayed in a visual depiction of actual sexually explicit conduct—

(1) ascertain, by examination of an identification document containing such information, the performer's name and date of birth, and require the performer to provide such other indicia of his or her identity as may be prescribed by regulations;

(2) ascertain any name, other than the performer's present and correct name, ever used by the performer including maiden name, alias, nickname stage, or professional name; and,

(3) record in the records required by subsection (a) the information required by paragraphs (1) and (2) of this subsection and such other identifying information as may be prescribed by regulation.